UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

MICHAEL L.,[1]

            Plaintiff,

    v.

MARTIN O'MALLEY,

            Defendant.

Case No.  22-cv-05373-RMI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 19, 23

Plaintiff seeks judicial review of an administrative law judge ("ALJ") decision denying his application for disability insurance benefits under Title II of the Social Security Act. *See* Admin. Rec. at 1.[2] The Appeals Council of the Social Security Administration ("SSA") declined to review the ALJ's decision. *Id.* As such, the ALJ's decision is a "final decision" of the Commissioner of Social Security, appropriately reviewable by this court. *See* 42 U.S.C. §405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge (dkts. 5, 8) and both parties have moved for summary judgment (dkts. 19, 23). For the reasons stated below, Plaintiff's Motion for Summary Judgment is granted, and Defendant's Cross Motion for Summary Judgement is denied.

## LEGAL STANDARDS

The Social Security Act limits judicial review of the Commissioner's decisions to final decisions made after a hearing. 42 U.S.C. § 405(g). The Commissioner's findings "as to any fact,

---

[1] Pursuant to the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States, Plaintiff's name is partially redacted.

[2] The Administrative Record ("AR"), which is independently paginated, has been filed in 21 attachments to Docket Entry #14. *See* (Dkts. 14-1 through 14-21).

if supported by substantial evidence, shall be conclusive." *Id.* A district court has limited scope of review and can only set aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error. *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The phrase "substantial evidence" appears throughout administrative law and directs courts in their review of factual findings at the agency level. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are supported by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The Commissioner's conclusion is upheld where evidence is susceptible to more than one rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## SUMMARY OF THE RELEVANT EVIDENCE

A. *Relevant Medical History*

Plaintiff suffers from heart problems which began to manifest in May of 2015, when Plaintiff was diagnosed with hypertrophic cardio myopathy ("HCM"), a genetic condition "characterized by unexplained left ventricular hypertrophy," or a thickening of the heart's walls. *See* AR 1720-21, 1589. The symptoms of HCM can include "hyperdynamic left ventricular function, diastolic dysfunction, atrial fibrillation, and ventricular arrhythmias" all of which can cause "sudden death." AR at 1589. While HCM is generally "well managed with medical therapy," and often does not require surgery or more intensive intervention (*id.*), Plaintiff's HCM diagnosis is a persistent concern throughout his medical record, and there is evidence to suggest that it is complicated by his other diagnoses. *See e.g.*, *id.* at 528, 529, 565, 583-84, 656, 657, 799, 844, 919, 924, 928, 996, 1532, 1533, 1539, 1589, 1653, 1720-21. More recently, Plaintiff has been discussing heart surgery with his doctors as a long-term solution to his HCM. *Id.* at 928, 966, 976, 966, 1539.

United States District Court
Northern District of California

United States District Court
Northern District of California

Plaintiff's HCM diagnosis is accompanied by persistent cardiac arrhythmia. *See e.g., id.* at 412-15, 423-27, 565, 602, 688, 708, 1639, 1652. In September of 2017, Plaintiff had an ablation to treat atrial fibrillation. *Id.* at 495. In October of 2017, Plaintiff presented at the emergency room for heart palpitations and shortness of breath. *Id.* at 423. He was determined to be in atrial fibrillation and his doctors administered an electrical cardioversion to shock his heart back into a normal sinus rhythm. *Id.* at 426. In December of that year, Plaintiff again presented to the emergency room with heart palpitations, this time accompanied by shoulder and neck pain. *Id.* at 412. Plaintiff received a second electrical cardioversion. *Id.* at 415.

From January 2018 through February of 2020, Plaintiff was relatively stable. *See e.g.*, *id.* at 744, 779, 810, 844, 852, 867. He took daily medication to manage both his HCM and atrial fibrillation (*see id.* at 676); underwent periods of monitoring, which largely showed an absence of significant atrial fibrillation, but did demonstrate atrial tachycardia (*id.* at 727); stopped working to reduce his mental and physical stress (*see id.* at 868, 921, 976-77, 996); and limited his exercise and activity (*see e.g.*, *id.* at 781, 938). While evidence in the record indicates that Plaintiff continued to be concerned about episodes of atrial fibrillation throughout this period and limited his exposure to stress accordingly, there is also evidence that Plaintiff denied having heart palpitations and was able to complete at least some exercise (*see e.g.*, *id.* at 852, 920). In February of 2020, Plaintiff again reported to the emergency room with heart palpitations. *Id.* at 1639. Prior to his hospitalization, Plaintiff had missed two doses of his heart medication. *Id.*

In addition to his heart conditions, Plaintiff also has difficulty with his hips. *See generally id.* at 506-13, 553, 564. In 2017, Plaintiff began to experience significant pain and discomfort due to severe arthritis in his left hip. *Id.* at 557. Plaintiff's mobility was limited, he walked with an assistive device, had difficulty putting on his socks and shoes, and was largely unable to exercise. *Id.* Initially, Plaintiff could not get cardiac clearance for hip replacement surgery. *Id.* However, in December 2018, Plaintiff's heart was stable enough to undergo surgery and Plaintiff's left hip was replaced. *Id.* at 506. His hip replacement was successful and, after a period of rehabilitation, Plaintiff's quality of life was greatly improved. *Id.* at 551-557. There is evidence of moderate degenerative changes in Plaintiff's right hip, but his physicians have yet to determine it is ripe for

1   surgery, although they anticipate that surgery is inevitable. *Id.* at 938, 966-67, 976, 1516.

2        In addition to his heart and hip impairments, Plaintiff also suffers from asthma,

3   hypertension, and obesity. *See e.g.*, *id.* at 413, 494, 505, 528, 529, 656, 670. Evidence of these

4   impairments is present throughout Plaintiff's medical record. *Id.*

5       B.   *Plaintiff's Testimony*

6        Plaintiff's testimony at his May 2021 hearing is summarized in relevant part as follows:

7   From 2006 to October 20, 2018, Plaintiff worked for various companies as a manager, in charge of

8   ATM maintenance and software contracts. *Id.* at 120-24. Plaintiff worked mostly from his office,

9   though he did a fair bit of commuting around the Bay Area to meet with clients. *Id.* at 124. *Id.* at

10  123. In October 2018, Plaintiff left his job at the direction of his doctors because of his heart

11  condition. *Id.* at 124. Plaintiff testified that his work was very stressful because there was a lot of

12  money on the line and if Plaintiff did not perform, then the company, and therefore Plaintiff,

13  would be penalized. *Id.* at 136-38. Plaintiff alleged that he was unable to work primarily because

14  the mental stress from his work exacerbated his heart condition. *See id.* at 138-39.

15       Plaintiff testified that he was diagnosed with hypertrophic cardiomyopathy, a condition

16  where the walls of the heart thicken, and decrease blood flow to and from the heart. *Id.* at 125. A

17  "byproduct of that condition" is atrial fibrillation and atrial flutter. *Id.* When Plaintiff experiences

18  atrial flutter atrial fibrillation, he becomes very out of breath, begins to sweat profusely, and

19  sometimes becomes sick and vomits. *Id.* at 125-26. In these instances, Plaintiff goes to the hospital

20  where he undergoes cardio inversions to get his heart back into a sinus rhythm. *Id.* at 126. Plaintiff

21  testified that incidents of atrial flutter occur "a minimum of once a month," that "it will last for

22  periods" and he will call the doctor, who will tell him to monitor his condition. *Id.*

23       When asked about a typical day, Plaintiff testified that he wakes up, feeds his dog, and

24  then takes his dog on a walk. *Id.* at 129. Plaintiff generally walks "about a mile and a half" at a

25  slow pace. *Id.* Depending on his exertion levels, Plaintiff will take breaks. *Id.* Plaintiff described

26  that if he got "overtaxed" he would "just stop, sit down, and … move on as [his] heart rate came

27  down." *Id.* at 129. Plaintiff monitors his heart rate using his Apple watch and does his best to

28  ensure that it does not become elevated, keeping it below 105 beats per minute. *Id.* When Plaintiff

4

United States District Court
Northern District of California

1    returns from his walk he rests, "cools down", and then, depending on how he is feeling, will do

2    some of his physical therapy, which consists of a 17-minute video available online. *Id.* at 130. It

3    takes Plaintiff 45 minutes to complete his 17-minute physical therapy video because he takes

4    breaks between the exercises and sets. *Id.* If he is not feeling up to his physical therapy, then he

5    will do some stretches for about 20 minutes to help with his hip, and occasionally, he incorporates

6    small hand weights. *Id.* Plaintiff keeps his exertion level low, and he does what he can to reduce

7    his mental and physical stress. *See id.* at 129-33.

8         After his walk and exercise, Plaintiff usually takes a shower. *Id.* at 132. If he has errands,

9    he will do his errands. *Id.* Otherwise, Plaintiff testified that "I just kind of sit back and relax for the

10   rest of the day. Do some reading. You know watch a little TV. That's about it." *Id.* Plaintiff feels

11   this is the extent of his abilities because of his heart and hip conditions. *See id.*

12        **THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

13        A person filing a claim for social security disability benefits ("the claimant") must show

14   that he has the "inability to do any substantial gainful activity by reason of any medically

15   determinable impairment" which has lasted or is expected to last for twelve or more months. *See*

16   20 C.F.R. §§ 416.905(a), 416.909. The ALJ must consider all evidence in the claimant's case

17   record to determine disability (*see id.* at § 416.920(a)(3)) and must use a five-step sequential

18   evaluation process to determine whether the claimant is disabled. *Id.* at § 416.920; *see also id.* at §

19   404.1520. While the claimant bears the burden of proof at steps one through four (*see Ford v.*

20   *Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020)), "the ALJ has a special duty to fully and fairly develop

21   the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d

22   441, 443 (9th Cir. 1983). Here, the ALJ appropriately set forth the applicable law regarding the

23   required five-step sequential evaluation process. AR at 24-25.

24        At step one, the ALJ must determine if the claimant is presently engaged in "substantial

25   gainful activity" (20 C.F.R. § 404.1520(a)(4)(i)), which is defined as work done for pay or profit

26   and involving significant mental or physical activities. *See Ford*, 950 F.3d at 1148. Here, the ALJ

27   determined that Plaintiff had not performed substantial gainful activity during the relevant period.

28   AR at 25.

1    At step two, the ALJ decides whether the claimant's impairment (or combination of

2 impairments) is "severe" (*see* 20 C.F.R. § 404.1520(a)(4)(ii)), "meaning that it significantly limits

3 the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

4 (quoting 20 C.F.R. § 404.1522(a)). If no severe impairment is found, the claimant will not be

5 found to be disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the

6 severe impairments of cardiac arrhythmia, obesity, and degenerative joint disease in both hips. AR

7 at 25. The ALJ did not address Plaintiff's HCM, asthma, or hypertension. *Id.*

8    At step three, the ALJ is tasked with evaluating whether the claimant has an impairment or

9 combination of impairments that meet or equal an impairment in the "Listing of Impairments." *See*

10 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1. The listings describe

11 impairments that are considered sufficiently severe as to prevent any individual so afflicted from

12 performing any gainful activity. *Id.* at § 404.1525(a). Each impairment is described in terms of

13 "the objective medical and other findings needed to satisfy the criteria in that listing." *Id.* at §

14 404.1525(c)(3). For a claimant to show that his or her impairment matches a listing, it must meet

15 all the specified medical criteria—an impairment that manifests only some of those criteria, no

16 matter how severely, does not "meet" that listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530

17 (1990). If an impairment either meets the listed criteria, or if one or more impairments are

18 determined to be medically equivalent to the severity of that set of criteria, that person is

19 conclusively presumed to be disabled without a consideration of age, education, or work

20 experience. *See* 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an

21 impairment or combination of impairments that meets or equals the criteria or severity of any of

22 the listings. AR at 26.

23    If a claimant does not meet or equal a listing, the ALJ must formulate the claimant's

24 residual functional capacity ("RFC"), which is defined as the most that a person can still do

25 despite the limitations associated with their impairment. *See* 20 C.F.R. § 404.1545(a)(1). Here, the

26 ALJ determined that Plaintiff could perform less than a full range of light work with the following

27 exceptions: Plaintiff could lift, carry, and push/pull 20 pounds occasionally and 10 pounds

28 frequently; Plaintiff could sit for six hours, stand for two hours and walk for two hours in an 8-

United States District Court
Northern District of California

1    hour work day; Plaintiff could climb ramps and stairs occasionally, balance, stoop, kneel, crouch,

2    and crawl occasionally, but could never climb ladders, ropes, or scaffolds; Plaintiff could never

3    work at unprotected heights or around moving mechanical parts; Plaintiff could occasionally

4    operate a motor vehicle. AR at 27. The ALJ did not include any limitations regarding the level of

5    mental stress Plaintiff could tolerate. *Id.*

6          Following the formulation of the RFC, the ALJ must determine—at step four—whether the

7    claimant can perform his past relevant work, which is defined as "work that [the claimant has]

8    done within the past 15 years, that was substantial gainful activity, and that lasted long enough for

9    [the claimant] to learn to do it." *See* 20 C.F.R. § 404.1560(b)(1). If the ALJ determines, based on

10   the RFC, that the claimant can perform his past relevant work, the claimant will not be found

11   disabled. *Id.* at § 404.1520(f). Otherwise, at step five, the burden shifts to the agency to prove that

12   the claimant can perform a significant number of jobs that are available in the national economy.

13   *See Ford*, 950 F.3d at 1149. To meet this burden, the ALJ may rely on the Medical-Vocational

14   Guidelines (commonly referred to as "the grids") (20 C.F.R. Pt. 404 Subpt. P, App. 2); or,

15   alternatively, the ALJ may rely on the testimony of a Vocational Expert ("VE"). *Ford*, 950 F.3d at

16   1149 (citation omitted). A VE may offer expert opinion testimony in response to hypothetical

17   questions about whether a person with the physical and mental limitations imposed by the

18   claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as

19   the claimant actually performed it or as generally performed in the national economy, or the

20   demands of other jobs that may be available in the national economy. *See* 20 C.F.R. §

21   404.1560(b)(1). An ALJ may also use other resources for this purpose, such as the Dictionary of

22   Occupational Titles ("DOT"). *Id.*

23         At step four, the ALJ determined that Plaintiff could perform his past relevant work as a

24   professional sales and service manager and contract administrator. AR at 31. As such, the ALJ did

25   not proceed to step five. *Id.* Accordingly, the ALJ determined that Plaintiff was not disabled at any

26   time during the relevant period. *Id.* at 33.

27   /

28   /

United States District Court
Northern District of California

United States District Court
Northern District of California

**DISCUSSION**

A. *The ALJ's Step Two Error*

At step two, the ALJ determined that Plaintiff's severe impairments were limited to cardiac arrhythmia, obesity, and degenerative joint disease of the left and right hip. AR at 25. The ALJ found that Plaintiff's non-alcoholic fatty liver disease, though medically determinable, was not severe. *Id.* at 25-26. The ALJ did not address Plaintiff's HCM, asthma, or hypertension.

Step two's evaluation is a *de minimus* test intended to weed out patently groundless claims and the most minor of impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987); *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2005) (stating that the step two inquiry is a *de minimus* screening device to dispose of groundless claims) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)); *Webb v. Barnheart*, 433 F.3d 683, 687 (9th Cir. 2005) (step two is a "*de minimis* threshold"). An impairment is non-severe at step two only if the evidence establishes a slight abnormality that has only a minimal effect on an individual's ability to work. *Smolen*, 80 F.3d at 1290.

Here, the ALJ failed to mention, let alone analyze, Plaintiff's HCM, asthma, and hypertension at step two. *See* AR at 25. This omission constitutes a legal error that is not harmless. *See Stout v. Comm'r Soc. Sec.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (explaining that an error is harmless only if it is not prejudicial to the claimant or is otherwise inconsequential to the ALJ's ultimate non-disability determination). HCM is Plaintiff's primary diagnosis. AR at 656. Evidence in the record demonstrates that Plaintiff's HCM is complicated by his persistent atrial fibrillation and that "patients with HCM generally have poor tolerance of arrhythmias." *See id.* at 1653. Further, Plaintiff and his physicians were considering heart surgery to treat his HCM (*id.* at 928, 966, 976, 966, 1539), and records indicate that Plaintiff managed his HCM by reducing his exposure to mental stress—specifically, by no longer working (*see e.g.*, *id.* at 529, 620). Thus, it is evident that Plaintiff's HCM was not so *de minimus* as to warrant complete dismissal—indeed, a lack of consideration entirely—at step two. Plaintiff's asthma and hypertension also deserve the ALJ's consideration, as they are diagnoses that appear repeatedly in Plaintiff's medical record and have the potential to limit Plaintiff's functional capacity. Neither diagnosis was mentioned in the

ALJ's decision. As such, the ALJ erred at step two by failing to account for all of Plaintiff's medically determinable impairments—an error which, if remedied, may have altered the ALJ's determination of Plaintiff's RFC and his ultimate finding of non-disability.

   B.   _The ALJ's Assessment of Plaintiff's Testimony_

When assessing a claimant's testimony regarding the subjective intensity, persistence, and limiting effects of their symptoms, an ALJ must first determine whether the claimant has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the symptoms alleged." _Vasquez v. Astrue_, 572 F.3d 586, 591 (9th Cir. 2009) (citing _Lingenfelter v. Astrue_, 504 F.3d 1028, 1035-36 (9th Cir. 2007). If such evidence is present, "and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his or her] symptoms only by offering specific, clear and convincing reasons for doing so." _Garrison_, 759 F.3d at 1015 (citing _Smolen v. Chater_, 80 F.3d 1273, 1281 (9th Cir. 1996) and _Robbins v. Soc. Sec. Admin._, 466 F.3d 880, 883 (9th Cir. 2006)) (internal quotations omitted). This is not an easy standard to meet; "[t]he clear and convincing standard is the most demanding required in Social Security Cases." _Id._ (citing _Moore v. Comm'r Soc. Sec. Admin._, 278 F.3d 920, 924 (9th Cir. 2002)).

The ALJ's reasons for dismissing claimant's testimony must be specific. _Brown-Hunter v. Colvin_, 806 F.3d 487, 493-95 (9th Cir. 2015). The ALJ must "identify the testimony [from a claimant] she or he finds not to be credible and … explain what evidence undermines that testimony." _Lambert v. Saul_, 980 F.3d 1266, 1277 (9th Cir. 2020) (quoting _Treichler v. Comm'r Soc. Sec. Admin._, 775 F.3d 1090, 1102 (9th Cir. 2014)). Further, a generic statement that the claimant's testimony is "not entirely consistent with the objective medical and other evidence," does not meet the specificity requirement. _Id._ (quoting _Treichler_, 775 F.3d at 1103 for the proposition that a "'boilerplate statement' by way of an 'introductory remark,' which is 'routinely include[d]' in ALJ decisions denying benefits," is not sufficiently specific because it does not "identify what parts of the claimant's testimony were not credible and why."); _see also Brown-Hunter_, 806 F.3d at 494-95 (finding that where an ALJ decision "simply stated [the ALJ's] non-credibility conclusion and then summarized the medical evidence supporting her RFC" the

specific, clear and convincing standard was not met because "providing a summary of medical evidence … is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible." (emphasis in original)).

In the decision before the court, the summarized Plaintiff's testimony and then stated that "[d]espite the claimant's allegations, his impairments cause debilitating functional limitations [sic] but to the contrary [sic], he is able to care for his personal needs, seek medical treatment, read, watch television, go on daily walks for about 1.5 miles, and participate in online exercises at home." AR at 28. The ALJ then included a boilerplate statement, with which the court is very familiar:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

The decision proceeds to summarize the medical evidence supporting the ALJ's RFC finding. *Id.* at 28-32.

The Commissioner asserts that the ALJ gave "specific, clear and convincing" reasons for dismissing Plaintiff's testimony by making two findings: (1) that Plaintiff's allegations were "not fully consistent with the medical evidence" and (2) that Plaintiff's alleged symptoms were "inconsistent with his daily activities." Def.'s Mot. (Dkt. 23) at 12.

Although a claimant's testimony may be disregarded if it is inconsistent with the medical record, the ALJ must identify "specific discrepancies between [a claimant's] testimony and the objective medical evidence." *Smartt v. Kijakazi*, 53 F.4th 489 (9th Cir. 2022) (finding ALJ's dismissal of Plaintiff's testimony was proper where ALJ pointed to discrepancies between claimant's testimony that she could not walk without an assistive device and medical records stating she could walk without an assistive device). However, a general finding that Plaintiff's testimony is not entirely consistent with the record will not suffice. *Brown-Hunter*, 806 F.3d at 494-95. Here, the ALJ did not articulate an inconsistency with the medical evidence to the level of specificity required by Ninth Circuit precedent. Boilerplate statements asserting a general

inconsistency with the evidence, followed by a summary of the evidence in support of an RFC finding, do not constitute "specific, clear and convincing" reasons for dismissing a claimant's pain and symptom testimony. *Lambert*, 980 F.3d at 1277. Additionally, the court may not "comb the administrative record to find specific conflicts," supplanting the ALJ's reasoning with its own. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (explaining that the court may not "take a general finding—an unspecified conflict between [c]laimant's testimony ... and her reports to doctors—and comb the administrative record to find specific conflicts"). And, the court declines the Commissioner's invitation to supply "specific, clear and convincing reasons" *post hoc. Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

A claimant's testimony may also be disregarded because of their daily activities. *See e.g.*, *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). There are two ways in which daily activities may undermine a claimant's testimony: first, daily activities may be incompatible with the severity of a claimant's alleged symptoms; and second, daily activities may indicate the claimant is capable of skills transferrable to the workplace. *Id.* (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (superseded on other grounds by 20 C.F.R. § 404.1502(a))). However, "the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1989). Moreover, "many home activities are not easily transferable to … the more grueling environment of the workplace[.]" *Id.; see also* *Garrison*, 759 F.3d at 1016 ("The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons …, and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.") (quoting *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012)). Thus, "[o]nly if the activity were inconsistent with claimant's claimed limitations would those activities have any bearing on

claimant's credibility." *Reddick*, 157 F.3d at 722.

Here, Plaintiff's claimed limitations are that he has to regulate his activity so as to ensure his heart rate does not go above 105 bpm; that in order to do so, he has to take frequent breaks to rest and cool down, that when he incorporates these breaks he is able to tolerate walking 1.5 miles, complete his online physical therapy videos, do some errands, cook dinner, read, and watch TV. AR at 129-30. Plaintiff testified that his atrial fibrillation is triggered by mental as well as physical stress, and, significantly, that it was primarily the mental stress associated with his previous employment that precluded his ability to work. *Id.* at 138-39.

The ALJ found these allegations to be inconsistent with Plaintiff's daily activities of walking 1.5 miles per day, reading, watching TV, and attending his doctor's appointments. It is unclear from the ALJ's decision whether the ALJ found Plaintiff's daily activities internally inconsistent with his testimony, or whether he found that Plaintiff's daily activities implied a level of functioning readily transferrable to the workplace. Nor is it evident whether the ALJ dismissed the entirety of Plaintiff's testimony as inconsistent, or simply certain statements of limitation. This obscurity is, itself, evidence that the ALJ's reasoning lacked the specificity required by the Ninth Circuit. *See Orn*, 495 F.3d at 639 ("The ALJ must make specific findings relating to [the daily] activities and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination.") (internal quotations and citations omitted).

In any event, neither inconsistency nor transferability applies here. Reading and watching television are not activities that induce mental or physical stress, and thus, do not conflict with Plaintiff's allegations that he cannot engage in stressful work. *Orn*, 495 F.3d at 639 ("reading [and] watching television … are activities that are so undemanding that they cannot be said to bear a meaningful relationship to the activities of the workplace"). It is evident that Plaintiff was able to complete his daily activities only with the type of modification that the home environment provides—such as frequent breaks, slow pace, and a lack of minimum performance standards—all of which are absent from the typical work environment. Plaintiff's primary allegation is that his heart was unable to handle the *mental* stress of his former employment. Plaintiff's ability to take his dog for a walk, do some physical therapy, and take himself to his medical appointments, but

12

1    otherwise spend his time resting does not conflict with his allegation that he could not perform in a

2    high-stress environment. Nor do these activities suggest that Plaintiff possessed a level of stress

3    tolerance transferrable to his former employment, for nothing about Plaintiff's daily activities

4    indicates performance under pressure. Thus, the ALJ's reliance on Plaintiff's daily activities is not

5    a "specific, clear and convincing" reason to dismiss Plaintiff's testimony.[3]

6         However, the court agrees with the Commissioner that there remains some doubt as to

7    Plaintiff's disability. Plaintiff's medical records indicate improvement and management of his

8    heart and hip conditions with treatment and medication. Def.'s Mot (Dkt. 23) at 12. They also

9    indicate that Plaintiff's physical activity was, at least at times, less restricted than Plaintiff

10   described at his hearing. AR at 868, 920-21. Further, there remains some ambiguity regarding the

11   impact of Plaintiff's cardiac arrhythmia on his underlying diagnosis of HCM, and the effect of

12   mental stress on Plaintiff's heart conditions. Accordingly, further administrative proceedings are

13   necessary to develop and clarify the record as to 1) the effect of Plaintiff's HCM on his symptoms

14   and functional limitations; 2) the extent of Plaintiff's physical limitations; and 3) the extent of

15   Plaintiff's tolerance of mental stress in the workplace. Thus, the court finds that there remain

16   "outstanding issues that must be resolved before a disability determination can be made," and that

17   "further administrative proceedings would be useful." *See Leon v. Berryhill*, 880 F.3d 1041, 1045

18   (9th Cir. 2017). Plaintiff's request for an immediate award of benefits is therefore DENIED. The

19   court REMANDS this matter for further administrative proceedings consistent with this order.

20

21   ─────────────────

     [3] The Commissioner is particularly concerned with Plaintiff's daily activities as they are memorialized in

22   two of Plaintiff's medical records. In 2019 Plaintiff reported to his doctors that he went to Tahoe and was
     able to walk around at high elevation without shortness of breath. AR at 868. In 2020, Plaintiff reported

23   that he was walking 9,000 steps a day, going to the gym 3 days a week, lifting 30-35 pounds, and walking
     on the treadmill for ten minutes at 3.5 miles per hour with an incline up to 9%. *Id.* at 920-21. The

24   Commissioner is right to see a potential inconsistency between this statement and Plaintiff's testimony at
     his hearing. However, the ALJ did not discredit Plaintiff's testimony by comparing his alleged daily

25   activities in 2021 with the daily activities he described to his doctors 2019 and 2020. Rather, the ALJ
     dismissed Plaintiff's testimony as inconsistent with his daily activities as Plaintiff described them at the

26   2021 hearing. For the reasons stated above, this is not a sufficiently "specific, clear and convincing reason"
     to discredit Plaintiff's testimony. The court may not make inferences—even if reasonable—from the ALJ's

27   summary of the RFC to supplement inadequate reasoning. *See Brown-Hunter*, 806 F.3d at 494-95. The
     court may only assess the ALJ's reasons as they are articulated in the decision on review; as such, the

28   Commissioner's arguments about Plaintiff's conflicting statements to his physicians are inapposite.

1    Because the court remands for further proceedings based on the ALJ's step two error and his

2    inadequate reasoning for dismissing Plaintiff's testimony, the court need not address Plaintiff's

3    alternative grounds for remand. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012)

4    ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [Plaintiff's]

5    alternative ground for remand."); *Steven M. v. Saul*, No. 19-cv-06991-RMI, 2021 WL 1056787, at

6    *5 (N.D. Cal Mar. 19, 2021). On remand, the ALJ is ORDERED to consider the issues raised in

7    Plaintiff's briefing and to modify any ensuing opinion to the extent necessary.

8                                              **CONCLUSION**

9           For the reasons stated above, Plaintiff's Motion for Summary Judgment is GRANTED and

10   Defendant's Cross Motion for Summary Judgment is DENIED. Accordingly, the court

11   REMANDS for further proceedings consistent with this order. A separate judgment shall issue.

12          **IT IS SO ORDERED.**

13   Dated: February 26, 2024

14

15

16                                                       ROBERT M. ILLMAN
                                                         United States Magistrate Judge
17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California